UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2022 FEB -1 AM 10: 48
CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| SASSOON PERESS and RENEWZ SUSTAINABLE SOLUTIONS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>ISUN, INC.<br><br>Defendant. | Docket No.: 2:22-cv-18 |

## AMENDED COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiffs, Sassoon Peress and renewz sustainable solutions, inc. by and through its attorneys, Lynn, Lynn, Blackman & Manitsky, P.C., and pursuant to Fed. R. Civ. P. 15(a)(1)(A) submits the following Amended Complaint.

1. Sassoon Peress is a resident of Montreal, Canada.

2. renewz sustainable solutions, inc. (renewz) is a Canadian company with its principal place of business in Montreal, Canada.

3. iSun, Inc. is a Delaware corporation with its principal place of business in Chittenden County, Vermont.

4. There is subject matter jurisdiction in this matter under 28 USC section 1332. The parties are diverse and the amounts in dispute exceed $75,000.

5. Mr. Peress has for many years been involved in the solar industry. He is widely recognized as a successful innovator and has important and valuable business contacts and connections throughout the United States and Canada.

6. In 2020, the Peck Holdings Company, Inc. and Peck Mercury, Inc. entered into negotiations to merge with iSun, LLC. iSun, LLC was owned by Mr. Peress. Mr. Peress also

owns renewz. The Peck entities sought to both merge with iSun (taking the name for the newly merged venture) and to take advantage of Mr. Peress' ability to gain access to business opportunities that the Peck entities would not have accessed.

7. Before reaching agreement, both parties engaged in due diligence. This included Mr. Peress providing the Peck entities with contracts benefiting his company.

8. Eventually, the parties reached agreement as demonstrated by various contracts, including an Agreement and Plan of Merger and Reorganization, Consulting Agreement for renewz (Merger Agreement) and the Peress Incentive Agreement.

9. The parties closed on January 19, 2021. At that time, the Peck entities and iSun, LLC became iSun, Inc. As part of the merger, Mr. Sassoon conveyed his ownership interest in iSun, LLC in exchange for 400,000 shares of iSun, Inc. (iSun).

10. The shares of iSun were subject to a vesting schedule with 40,000 shares issued without restriction upon closing. The remaining 360,000 shares were subject to certain restrictions and a issuance schedule. Most importantly, 160,000 shares of iSun were provided to Mr. Peress at closing. Those shares were subject to a one year lock-up period. The shares had a legend on them restricting any right to transfer the shares. At the end of the one year period, iSun was contractually bound to issue new shares that would be transferrable. The merger agreement also required, among other things, the issuance of 50,000 additional shares on January 3, 2022.

11. The parties also executed an incentive compensation agreement to benefit Mr. Peress after merger as part of the overall deal. The document recognized that some of Mr. Peress' contacts could lead to significant contracts for iSun. Those contacts were identified as "Prospects." Under the Incentive Agreement, if Mr. Peress' contacts led to sales, Mr. Peress would be entitled to additional shares. The maximum number of shares that could be earned was 240,000.

Under the Incentive Agreement, Mr. Peress had until January 19, 2024 to reach the milestones necessary to generate additional shares as compensation for iSun contracts.

12. The Incentive Agreement could only be terminated by iSun "for cause." The definition of cause incorporates by reference the definition contained in the Consulting Agreement with renewz.

13. The merger documents, as noted above, also included a Consulting Agreement with renewz. Under the terms of that agreement, renewz was to be paid a salary and expenses for non-exclusive work provided to iSun. The Consulting Agreement identified for cause and without cause as the sole bases for termination of the contract.

14. Under the Consulting Agreement, for cause termination required that there be a material breach of the agreement, that it not be susceptible to cure or that it was not cured with 30 days' notice. Accordingly, the Incentive Agreement could only be terminated for cause under the same circumstances.

15. As part of the merger, Mr. Sassoon was also made a corporate officer of iSun under an agreement called the Officer Agreement.

16. During the time that Mr. Peress worked for iSun, he brought it numerous valuable business opportunities. The nature and scope of the opportunities were well beyond anything the former Peck companies had ever experienced. Some of those opportunities were squandered because iSun was not able to execute at the scale and location of the opportunities. Other opportunities have nearly come to fruition. One such opportunity turned into iSun's biggest ever contract. Mr. Peress was extremely successful in the work he performed after merger for iSun.

17. On December 16, 2021, Jeffrey Peck, the CEO of iSun, issued notice to Mr. Sassoon that there had been a failure to "reach accord as to the methods and timing of the work"

being performed by renewz for iSun and that there had been a "long-standing" dispute as to representations and warranties made in connection with the Merger Agreement.

18. The Peck letter sought to force Mr. Peress to enter into a settlement agreement without ever identifying any specific facts that supported a settlement. In fact, there were no such facts. It was an attempt to leverage down the obligations owed to Mr. Peress.

19. When Mr. Peress refused to "settle" with iSun, iSun issued two December 22, 2021 communications. One was a letter to Mr. Sassoon indicating that iSun had terminated various agreements with Mr. Sassoon and his company on December 16, 2021. That was in fact untrue. The December 16 letter did not provide notice that iSun was terminating any agreement. The December 22 letter states that the agreements terminated were the Officer Agreement, Consulting Agreement and the Incentive Agreement. It states that the termination was for cause that "is not susceptible to cure." iSun did not identify what significant misconduct not susceptible to cure supported its position. Further, the earlier correspondence suggested that the issue supporting a for cause termination was "methods and timing" of Mr. Sassoon's work. Such matters are obviously susceptible to cure.

20. The suggestion in the December 22 letter that Mr. Peress had engaged in misrepresentation is equally flawed. The Merger Agreement clearly identifies the warranties and representations to be made by Mr. Sassoon. Section 3.18 disclaims any other representations or warranties outside of those in the agreement. Mr. Peress did not make any representations in the agreement about his "business relationships with various potential customers and suppliers," the apparent basis for the attempt to avoid the obligation to pay under the Merger Agreement. In any event, under Sections 7.12 and 7.13, the alleged misstatements or mischaracterizations by Mr.

Peress are not actionable or material to the Merger Agreement. The iSun claims about misrepresentations or mischaracterizations are bogus.

21. Later the same day, December 22, 2021, Jeff Peck sent an email to Mr. Peress stating that iSun "made the decision to terminate" Mr. Peress as an officer of the company and had terminated the other agreements identified above. He emphasized that the termination was "for cause." However, the facts supporting the for cause termination were not identified.

22. The Merger Agreement required that iSun remove the legends on the 160,000 shares held by Mr. Peress on January 19, 2022. It refused to do so without any basis in law or fact. The Merger Agreement also required transfer of 50,000 shares to Mr. Peress. iSun refused to do so without any basis in fact or law.

23. To make matters worse, iSun publicly announced that Mr. Peress had been terminated because of misconduct sufficient to support a for cause termination.

**COUNT I (Breach of Contract)**

24. Plaintiffs restate the above allegations as if fully set forth here.

25. iSun and Plaintiffs had binding agreements that required iSun to compensate Plaintiffs with shares of iSun and money.

26. The Officer Agreement, Incentive Compensation Agreement and Consulting Agreement were terminated by iSun for cause that was not susceptible to cure.

27. No such cause existed to support termination of the agreements.

28. The Merger Agreement required the release of shares and the transfer of shares from iSun to Mr. Peress.

29. iSun refused to comply with its contractual commitment under the Merger Agreement and had no factual or legal basis to do so. It has indicated that it will not comply with future contractual obligations and consider the Merger Agreement not to be binding on it.

30. iSun's conduct constitutes breach of its contractual obligations owed to Plaintiffs. Plaintiffs have suffered financial harm because of the breach of contract by iSun.

31. The Merger Agreement states that either party is entitled to specific performance for breach of the Agreement. Accordingly, Mr. Peress is entitled to specific performance.

### Count II (Defamation)

32. Plaintiffs restate the above allegations as if fully set forth here.

33. iSun did not have cause to support the termination of various agreements with Mr. Peress. iSun knew that it did not have cause. Nonetheless, iSun publicly announced that Mr. Peress engaged in misconduct sufficient to support a for cause termination.

34. The statements were issued to the public. They were made with negligence or greater fault.

35. Mr. Peress has suffered special damages as a consequence of the false and defamatory statements. Among other damages, the public was misled to believe that Mr. Peress engaged in misconduct sufficient to support a for cause termination.

### Count III (Breach of Covenant of Good Faith and Fair Dealing)

36. Plaintiffs restate the above allegations as if fully set forth here.

37. Every contract in Vermont has an implied covenant of good faith and fair dealing.

38. iSun breached the covenant of good faith and fair dealing by engaging in the false campaign to claim grounds for a for cause termination.

39. Mr. Peress' efforts to make opportunities for iSun were on the verge of being very successful. He brought new and valuable business opportunities to iSun. Once iSun had the business opportunities, it concluded that it no longer needed Mr. Peress and did not wish to pay him for the opportunities he brought the company.

40. The true reason to terminate Mr. Peress for cause is to avoid the significant compensation he is owed under the various agreements, either with renewz or Mr. Peress. Mr. Peress has suffered compensable harm because of the breach of the covenant of good faith and fair dealing.

### Count IV (Punitive Damages)

41. Plaintiffs restate the above allegations as if fully set forth here.

42. The actions taken by iSun were with actual malice. They were in reckless disregard of the rights of the Plaintiffs.

43. Plaintiffs are entitled to punitive damages.

### Count V (Unjust Enrichment)

44. Plaintiffs restate the above allegations as if fully set forth here.

45. iSun received significant benefits by virtue of the business opportunities brought to it by Plaintiffs.

46. Plaintiffs spent considerable time and effort working to bring those opportunities to iSun. The business opportunities will yield millions of dollars of new business for iSun. They have already led to the biggest contract ever for iSun.

47. Under the circumstances, it would be unjust for iSun to retain the benefits conferred by Plaintiffs without compensation to Plaintiffs.

Wherefore, Plaintiffs demand the following relief:

1. Compensatory and punitive damages;

2. Specific performance where indicated by contract.

3. Attorney's fees and costs;

4. Prejudgment interest;

5. All other relief that the court deems just and equitable.

## Jury Demand

Mr. Peress demand trial by jury under the claims related to the Merger Agreement, which does not waive jury trial. Plaintiffs otherwise demand trial by jury on the remaining claims, to the extent that they fall outside of any jury waiver contained in the operative contracts.

DATED at Burlington, Vermont, this 1st day of February, 2022.

SASSOON PERESS and RENEWZ
SUSTAINABLE SOLUTIONS, INC

By: _____
Pietro J. Lynn, Esq.
Lynn, Lynn, Blackman & Manitsky, P.C.
*Attorneys for Plaintiffs*
76 St. Paul Street, Suite 400
Burlington, VT 05401
802-860-1500
plynn@lynnlawvt.com